Cory R. Gangle, Esq.
GANGLE LAW FIRM, PC
Lambros Building
3011 American Way
P.O. Box 16356
Missoula, Montana 59808
Office: (406) 273-4304
Fax:    (406) 493-0006
Email:  cgangle@ganglelaw.net

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| RED LODGE INN MANAGEMENT COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> PHILADELPHIA INDEMNITY INSURANCE COMPANY, <br><br> Defendant. | **COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT** |

COMES NOW the Plaintiff, Red Lodge Inn Management Company, and for

its Complaint and Request for Declaratory Judgment, alleges as follows:

COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT     P a g e | 1

## Parties and Jurisdiction

1.      Plaintiff Red Lodge Inn Management Company is a Montana corporation, with its principal place of business in Red Lodge, Carbon County, Montana.

2.      Upon information and belief, Defendant Philadelphia Indemnity Insurance Company is an insurance company which extends insurance coverage nationally.   Defendant appears to be incorporated as a Domestic Business Corporation in the State of Pennsylvania, with its registered office in Montgomery County, Pennsylvania.

3.      The allegations contained in this Complaint, Request for Declaratory Judgment, and Jury Demand pertain to a flood insurance policy issued by Defendant to Plaintiff on or about July 25, 2021, under Company Policy No. 99056913732021.  The insurance policy issued by Defendant is a National Flood Insurance Policy (NFIP), No. 9905691373.  Pursuant to Section VII(O) of said policy, suit must be filed with the United States District Court of the district in which the insured property was located at the time of the loss. Plaintiff is the insured.  Plaintiff's insured property was (and is) located in Red Lodge, Carbon County, Montana at the time of the loss alleged herein.  Therefore, pursuant to NFIP policy, the United States District Court, District of Montana, Billings

Division, has jurisdiction over the allegations contained herein, and over the

parties.

4.     This Court has subject matter jurisdiction over this case pursuant to 28

U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,0000,

exclusive of interest and costs, and because the claims are between citizens and

entities of different states.

5.     The United States District Court, District of Montana, Billings

Division is the proper venue in which to try this action pursuant to 28 U.S.C. §

1391(b)(2) because the acts, events, and/or omissions giving rise to this Complaint

occurred within the District of Montana, and because the applicable insurance

policy states that the action is to be tried in the location where the covered property

is situated.

6.     Venue is also appropriate pursuant to Local Rule of Procedure 3.2(b).

### General Allegations

7.     Plaintiff re-alleges Paragraphs 1-6 above as fully incorporated herein.

8.     Plaintiff Red Lodge Inn Management Company ("Red Lodge Inn")

owns and operates a 15-room hotel in Red Lodge, Montana.

9.     The address for Plaintiffs' hotel is 817 Broadway Avenue South, Red

Lodge, MT 59068.

10.    The legal description for the property is:

COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT     P a g e | 3

Lots 4 & 5, Block 79, Red Lodge First Addition, and part of Daly Avenue lying easterly of said Lots 4 & 5, Block 79, Section 34, Township 7 South, Range 20 East, P.M.M. Carbon County, Montana.

11.     On or about July 25, 2021, Plaintiff applied for flood insurance through Paynewest Insurance, Inc., in Billings, Montana.

12.     Upon information and belief, Paynewest Insurance, Inc. is an agency which provides flood insurance policies underwritten through Defendant, Philadelphia Indemnity Insurance Company.

13.     Upon information and belief, Defendant Philadelphia Indemnity Insurance Company is a private insurance company authorized to issue flood insurance policies reinsured and/or subsidized under the National Flood Insurance Program ("NFIP").

14.     Upon information and belief, the NFIP is managed by the Federal Emergency Management Agency (FEMA).

15.     Upon application, Plaintiff met the qualifications for flood insurance and was issued a Standard Flood Insurance Policy No. 99056913732021 ("Policy No. 99056913732021") by the Defendant with an effective term of July 25, 2021 through July 25, 2022.  *See*, Exhibit 1.

16.     Plaintiff paid valuable consideration for the policy, known as the "premiums."

COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT     P a g e | 4

17.     The policy covered damage to Plaintiffs' property, including the building and the building contents, in the event the property was damaged by a flood as defined by the policy.

18.     According to the Declarations page for Policy No. 99056913732021 the Building coverage is $500,000, and the Building Contents coverage is $105,000.  *See*, Exhibit 2.

19.     Upon information and belief, Defendant was aware, or should have been aware, of the condition of Plaintiffs' property and building at the time Defendant extended insurance coverage to Plaintiff under Policy No. 99056913732021.

20.     In the Spring of 2022, Red Lodge experienced torrential flooding from Rock Creek.  Most of the town, including the main street, was flooded.

21.     Plaintiff's property was directly in line of the flood waters and as a result, Plaintiff's entire hotel building was flooded.

22.     Portions of Plaintiffs' building, including the structure, was damaged as a result of the flooding.

23.     Substantial items of personal property in the hotel building were damaged as a result of the flooding.

24.     For purposes of this Complaint, the date of loss has been determined to be June 13, 2022.

COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT     P a g e | **5**

25.    On June 14, 2022 the Plaintiff submitted a claim to Defendant for coverage.

26.    Upon information and belief Defendant assigned the claim to Colonial Claims, LLC for independent adjusting.  Colonial Claims contracted with Dwight Collins to assist in adjusting the claim.

27.    On June 15, 2022, Dwight Collins came to Plaintiff's property to inspect the flood damage.  Mr. Collins verbally advised Plaintiff's representatives that everything in Rooms 7-16 of the hotel building would have to be replaced and that they should discard these items.

28.    Plaintiff's representatives began immediately removing the personal property and fixtures from Rooms 7-16 and discarding them, as instructed by Dwight Collins.

29.    The Plaintiff then began reaching out to local contractors for estimates for remediation and restoration.  Plaintiff found that this was a difficult task – the local area was still suffering the effects of the COVID-19 pandemic.  Contractors were in short supply and many did not want to take the time to provide bids for the work.  Further, the extent of the damage was still unknown.

30.    On June 25, 2022 Plaintiff submitted an "advance payment request" to Defendant to secure some immediate coverage so that the Plaintiff could begin remediation and restoration work and mitigate their damages. *See,* Exhibit 3.  This

Advance Payment Request acknowledged that "the investigation of your loss is not complete at this time." It further acknowledged that "acceptance by you does not represent a satisfaction or release of all claims."

31.   Plaintiff received an advance payment of $50,000 on July 1, 2022. Upon information and belief, $40,000 of this advance payment was for the building coverage, and $10,000 was for the building content coverage.

32.   On July 5, 2022, a representative of Keystone Experts & Engineers (from Castle Rock, Colorado) came to inspect the property. He was hired by Philadelphia Insurance to see if there was any structural damage.

33.   On July 12, 2022, Keystone Experts & Engineers prepared a report for the Defendant regarding their inspection of the Red Lodge Inn. The purpose of the report was "to determine the cause of reported water entry through the basement walls and if it was related to flooding." The report acknowledged that there was physical damage to the building, but there did not appear to be any structural damage.

34.   On August 5, 2022, Plaintiff received verbal notice from Defendant that they would be receiving two payments:

- $169,622 for the building (leaving a balance of $330,378 of available building coverage).

- $45,208.58 for building contents (leaving a balance of $59,790.42 of available content coverage).

COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT   Page | 7

35.     Plaintiff timely submitted a sworn Proof of Loss on FEMA Form No. 086-0-9 to the Defendant on August 9, 2022.  *See*, Exhibit 4.  This Proof of Loss was an estimate of the loss, based on the information gathered by the Plaintiff and by Colonial Claims at the time of submission.  The Proof of Loss specifically stated that "Any other information that may be required will be furnished and considered a part of this proof."

36.     Plaintiffs' proof of loss included a claim for damage to the structure as a result of flooding.

37.     On August 9, 2022 Keystone Engineering submitted a "supplemental statement" alleging that the damage to the building was from its age, not the flood.

38.     On August 10, 2022 Defendant submitted a letter to the Plaintiff determining that Plaintiff was owed $209,662 for building coverage and $55,160.70 for contents coverage under Policy No. 99056913732021.  *See*, Exhibit 5.  In this letter the Defendant advised Plaintiff that Plaintiff's claim for damages caused to the structure were denied under Policy No. 99056913732021.

39.     Defendants' August 10, 2022 letter stated "If you have any questions, <u>have additional documentation for us to review</u>, or need additional assistance, please contact your adjuster or our Claims Representatives at (877) 254-6819." *See*, Exhibit 5 (emphasis added).

COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT     P a g e | **8**

40.     On August 22, 2022 the Plaintiff received the payments of $169,622 and $45,208.58.  The larger payment had to be sent to Red Lodge Inn's secondary lender for endorsement.  The smaller check was deposited into to Red Lodge Inn's account.

41.     Plaintiff notified Defendants' independent adjuster that they disputed Keystone Engineer's reporting and they hired their own independent engineering firm for a second opinion.  Sam Bower, PE, of Dynamic Analysis Engineering Consulting, Inc. came to the Red Lodge Inn property on September 6, 2022 and made a brief inspection.  Mr. Bower verbally determined that the structure itself had been damaged from the flood waters.

42.     On September 21, 2022 Dynamic Analysis submitted a summary letter indicated that it was "undisputable that the building has suffered damages." They opined that it was "more than likely" that the building experienced new and worsened damages as a result of the flooding.  Dynamic Analysis recommended that additional engineering design due to the extensive shoring of the floor system was required.   This was just a summary report – not a final engineering report.

43.     The report from Dynamic Analysis was submitted to Colonial Claims, who, upon information and belief, forwarded the report to Defendant.

44.     Keystone Experts and Engineers sent a "second supplement" to Philadelphia Insurance on September 27, 2022.   This supplement referenced

COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT     P a g e  | 9

Dynamic Analysis' report, and ultimately concluded (without any secondary inspection) that Dynamic Analysis was wrong, and that all of the damage complained of was pre-existing.

45.    On September 28, 2022, Defendant sent a follow-up letter to Red Lodge Inn contending that regardless of the report from Dynamic Analysis, there was no structural damage based on Keystone Expert's "second supplement." Defendant's letter stated that "we are upholding our denial of the foundation and walls not damaged by direct physical loss by or from flood.  Please refer to the letter dated August 10, 2022." *See*, Exhibit 6.

46.    Pursuant to continued requests for information, Plaintiff and its representatives continued providing information to the Defendants' adjuster to support Plaintiff's claim for damages.

47.    In December 2022 the claim was still not resolved. Defendant was not acknowledging the additional information submitted by the Plaintiff.  At this point Plaintiffs elected to retain counsel to assist them in securing the necessary coverages under Policy No. 99056913732021.

48.    On December 29, 2022 Plaintiffs submitted a Letter of Representation to FEMA regarding Policy No. 99056913732021. This Letter of Representation was signed by the Plaintiff's representatives. *See*, Exhibit 7.  This Letter of Representation was also forwarded to Dwight Collins on December 29, 2022.

Plaintiff's Letter of Representation conforms to FEMA's requirements and NFIP regulations.

49.     Defendant, through their independent adjuster, acknowledged receipt of Plaintiff's Letter of Representation on December 29, 2022.  *See,* Exhibit 8.

50.     From that time forward, Plaintiff's counsel communicated directly with Defendant's independent adjuster, Colonial Claims.

51.     On January 20, 2023 a representative from Colonial Claims acknowledged that the "claim has ground to a halt and that's not acceptable.  I'll do my best to get the ball rolling again on my end."  *See*, Exhibit 9.

52.     Plaintiff retained Dynamic Analysis to provide a detailed report explaining how the Plaintiffs' structure was damaged by the flood waters. Dynamic Analysis unequivocally concluded that there was damage to Plaintiff's structure as a direct and proximate result of the June 2022 flooding.  This report was submitted to Defendant.

53.     At the request of Defendants' independent claims adjuster, Plaintiff submitted additional information documenting their loss and their claims to the Defendant on March 23, 2023.  Plaintiff demanded building coverage in the amount of $290,378.00, and contents coverage in the amount of $41,812.05.  *See*, Exhibit 10 (demand letter only – supporting information not included due to size).

54.     A summary of Plaintiff's total loss is outlined as follows:

Total Damage to Building

- Mitigation of property damaged by flood (includes removal of damaged property and drying out of the structure in preparation for restoration).                     $211,738.56

- Repair of the foundation/structure due to damage caused by the flooding.                     $304,600.00

- Restoration of building to habitable condition.                     $149,015.61

  TOTAL BUILDING DAMAGE:                     $665,354.17

Total Damage to Building Contents

- Replacement of personal property/contents damaged or marred as a result of moisture contact or infiltration, or as may have been discarded/destroyed pursuant to Adjuster Dwight Collins' recommendations.                     $97,020.63

55.     The total damages to Plaintiff's building as a result of the June 2022 flood is $665,354.17.  Policy No. 999905691373 provides for building coverage in the amount of $500,000.  Plaintiff has received compensation from Defendant for building coverage in the amount of $209,622.00.  The amount remaining to be paid for building coverage under Policy No. 999905691373 is $290,378.

56.     The total damage to Plaintiff's building contents as a result of the June 13, 2022 flood is $97,020.63.  Policy No. 999905691373 provides for building contents coverage in the amount of $105,000.  Plaintiff has received compensation from Defendant for building contents coverage in the amount of $55,208.58.  The amount remaining to be paid for building contents coverage under Policy No. 999905691373 is $41,812.05.

COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT   P a g e | **12**

57.     Defendant has ignored Plaintiff's submission of supplemental information.

58.     Plaintiffs are continuing to suffer damages as a result of Defendant's failure to timely provide coverage for the damages caused to Plaintiffs' building and building contents by the June 2022 flooding. Such damages include, but are not limited to, the inability to rent out rooms because they have not been remediated and restored to a habitable condition.

<u>**Coverages**</u>

59.     Plaintiff re-alleges Paragraphs 1-58 above as fully incorporated herein.

60.     Policy No. 9905691373 provided the following coverages:

III.    Property Insured.

     A.     Coverage A – Building Property.
           We insure against direct physical loss by or from flood to:

          1.     The building described on the Declarations Page at the described location.

* * *

          4.     The following fixtures, machinery, and equipment, which are insured under Coverage A only:
              a.     Awnings and canopies;
              b.     Blinds;
              c.     Carpet permanently installed over unfinished flooring;
              d.     Central air conditions;

    e.     Elevator equipment;

    f.     Fire extinguishing apparatus;

    g.    Walk-in freezers;

    h.    Furnaces;

    i.     Light fixtures;

    k.    Outdoor antennas and aerials attached to buildings;

    l.     Permanently installed cupboards, bookcases, paneling, and wallpaper;

    m.   Pumps and machinery for operating pumps;

    n.    Ventilating equipment;

    o.    Wall mirrors, permanently installed; and

    p.    In the units within the building, installed:

        (1)   Built-in dishwashers;

        (2)   Built-in microwave ovens;

        (3)   Garbage disposal units;

        (4)   Hot water heaters, including solar water heaters;

        (5)   Kitchen cabinets;

        (6)   Plumbing fixtures;

        (7)   Radiators;

        (8)   Ranges;

        (9)   Refrigerators; and

        (10)  Stoves.

              * * *

8.    Items of property below the lowest elevated floor of an elevated post-FIRM building located in zones A1-A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1-A30, V1-V30, or VE, or in a basement regardless of the zone.  Coverage is limited to the following:

    a.    Any of the following items, if installed in their functioning locations and, if necessary for operations, connected to a power source:

        (1)   Central air conditions;

        (2)   Cisterns and the water in them;

        (3)   Drywall for walls and ceilings in a basement and the cost of labor to nail it, unfinished and unfloated and not taped, to the framing;

(4)    Electrical junction and circuit breaker boxes;

(5)    Electrical outlets and switches;

(6)    Elevators, dumbwaiters, and related equipment, except for related equipment installed below the base flood elevation after September 30, 1987;

(7)    Fuel tanks and the fuel in them;

(8)    Furnaces and hot water heaters;

(9)    Heat pumps;

(10)    Nonflammable insulation in a basement;

(11)    Pumps and tanks used in solar energy systems;

(12)    Stairways and staircases attached to the building, not separated from it by elevated walkways;

(13)    Sump pumps;

(14)    Water softeners and the chemicals in them, water filters, and faucets installed as an integral part of the plumbing system;

(15)    Well water tanks and pumps;

(16)    Required utility connections for any item in this list; and

(17)    Footings, foundations, posts, pilings, piers, or other foundation walls and anchorage systems required to support a building.

b.    Clean-up.

B.    Coverage B – Personal Property.

1.    If you have purchased personal property coverage, we insure, subject to B.2 – 4 below, against direct physical loss by or from flood to personal property inside the fully enclosed insured building:

a.    Owned solely by you, or in the case of a condominium, owned solely by the

condominium association and used exclusively in the conduct of the business affairs of the condominium association; or

    b.    Owned in common by the unit owners of the condominium association.

2.    We also insure such personal property for 45 days while stored at a temporary location, as set forth in III.C.2.b, Property Removed for Safety.

3.    When this policy insures personal property, coverage will be either for household personal property or other than household personal property, while within the insured building, but not both.

    a.    If this policy insures household personal property, it will insure household personal property usual to a living quarters, that:

        (1)    Belongs to you, or a member of your household, or at your option:

            (a)    Your domestic worker;

            (b)    Your guest; or

        (2)    You may be legally liable for.

    b.    If this policy insures other than household personal property, it will insure your:

        (1)    Furniture and fixtures;

        (2)    Machinery and equipment;

        (3)    Stock; and

        (4)    Other personal property owned by you and used in your business, subject to IV, Property Not Insured.

4.    Coverage for personal property includes the following property, subject to B.1.a and B.1.b above, which is insured under Coverage B only:

    a.    Air conditioning units, portable or window type;

    b.    Carpets, not permanently installed, over unfinished flooring;

    c.    Carpets over finished flooring;

    d.    Clothes washers and dryers;

    e.    "Cook-out" grills;

    f. Food freezers, other than walk-in, and food in any freezer;

    g. Outdoor equipment and furniture stored inside the insured building;

    h. Ovens and the like; and

    i. Portable microwave ovens and portable dishwashers.

  5. Coverage for items of property below the lowest elevated floor of an elevated post-FIRM building located in zones A1-A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1-A30, V1-V30, or VE, or in a basement regardless of the zone is limited to the following items, if installed in their functioning locations and, if necessary for operations, connected to a power source:

    a. Air conditioning units, portable or window type;

    b. Clothes washers and dryers; and

    c. Food freezers, other than walk-in, and food in any freezer.

      * * *

C. Coverage C – Other Coverages.

  1. Debris removal.

    a. We will pay the expense to remove the non-owned debris that is on or in insured property and debris of insured property anywhere.

    b. If you or a member of your household perform the removal work, the value of your work will be based on the Federal minimum wage.

    c. This coverage does not increase the Coverage A or Coverage B limit of liability.

## COUNT I
## Request for Declaratory Judgment

61.     Plaintiff re-alleges Paragraphs 1-60 above as fully incorporated herein.

62.     28 U.S.C.§ 2201, et al, authorizes proceedings for declaratory judgment in cases where there is an actual controversy within the Court's jurisdiction.  The Court, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

63.     There is a controversy between the parties named herein.  Plaintiff, as an insured under Policy No. 99056913732021 issued by the Defendant, is seeking coverage for damages sustained to its property as a result of flooding.  Defendant, as the insurer, has refused to provide the full amount of coverages claimed by the Plaintiff.

64.     Plaintiff, as the insured under Policy No. 99056913732021 has standing to bring the claims alleged herein.

65.     Plaintiff has fully complied with the requirements of NFIP's Standard Flood Insurance Policy, issued as Policy No. 99056913732021.

67.     Section III(A) of Policy No. 99056913732021 insures "against direct physical loss by or from flood to: (1) the building described on the Declarations Page at the described location."

68.    The insured building described on the Flood Policy Declarations (Exhibit 2) is the motel building described herein.

69.    The insured building suffered both physical and structural damage as a direct result of the flood from June 2022.

70.    The damage to the insured building caused by the flooding, including physical damage and structural damage, is estimated at $665,354.17.   Supporting estimates were documented and submitted to the Defendant.  Policy No. 999905691373 provides for building coverage in the amount of $500,000.  Plaintiff has received compensation from Defendant for building coverage in the amount of $209,622.00.  The amount remaining to be paid for building coverage under Policy No. 999905691373 is $290,378.

71.    Section III(B) of Policy No. 999905691373 insures "against physical loss by or from flood to personal property inside the fully enclosed insured building…"

72.    The damage to the insured building contents caused by the flooding, including physical damage and structural damage, is estimated at $97,020.63. Supporting estimates were documented and submitted to the Defendant.  Policy No. 999905691373 provides for building contents coverage in the amount of $105,000.  Plaintiff has received compensation from Defendant for building

contents coverage in the amount of $55,208.58. The amount remaining to be paid for building contents coverage under Policy No. 999905691373 is $41,812.05.

73.     The damages complained of are insured by Policy No. 99056913732021.

74.     Plaintiff has complied with all requirements of Policy No. 99056913732021.

75.     Defendant refused to properly examine Plaintiff's claim or respond to additional information submitted by the Plaintiff.

76.     Defendant unduly delayed processing the claim; it has had additional information supporting Plaintiff's claim of flood damages since March 20, 2023 and it has refused to respond to this information.

77.     Plaintiff requests that this Court grant judgment in its favor, ruling, as a matter of law, as follows:

(a)     Plaintiff's building suffered damages in amounts exceeding $665,354.17. The amount of coverage available under Policy No. 99056913732021 is $500,000. Defendant has extended the sum of $209,622.00 to the Plaintiff. The amount remaining unpaid is $290,378.00. Defendant is obligated to pay Plaintiff this amount.

(b)     Plaintiff's building contents suffered damages in amounts exceeding $97,020.63. The amount of coverage available under Policy No.

999905691373 is $105,000.  Plaintiff has received compensation from

Defendant for building contents coverage in the amount of

$55,208.58.  The amount remaining to be paid for building contents

coverage under Policy No. 999905691373 is $41,812.05.

WHEREFORE, Plaintiff requests the following relief:

1.    For Declaratory Judgment as alleged herein;

2.    For any actual damages;

3.    For any consequential or incidental damages;

4.    For any attorneys' fees or costs which may be available under Policy

No. 999905691373, federal law, or the Federal Rules of Civil Procedure; and

5.    For any other relief this Court deems just and necessary in this matter.

DATED this 14th day of July, 2023.

GANGLE LAW FIRM, PC.
*Attorneys for Plaintiff*


By: /s/Cory R. Gangle_____
      Cory R. Gangle, Esq.